**UGI UTILITIES, INC.—GAS DIVISION, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**Irwin A. POPOWSKY, Consumer Advocate, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided June 10, 1996.

---

David B. MacGregor, for Petitioner, UGI Utilities.

John A. Levin, Assistant Counsel, for Respondent.

Zsuzsanna E. Benedek, Assistant Consumer Advocate, for Intervenor, Irwin A. Popowsky.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, and KELLEY, JJ.

COLINS, President Judge.

In these two consolidated cases, UGI Utilities, Inc.—Gas Division (UGI) and Irwin A. Popowsky, the Consumer Advocate (Popowsky), have filed cross-petitions for review of a February 27, 1995 order of the Pennsylvania Public Utility Commission (Commission) that sustained Popowsky's complaint docketed to No. M–00940549C0001, denied UGI's complaint docketed to No. M–00940549C0002, and permitted UGI to recover $775,686.00 from an 18.1 million dollar take-or-pay (TOP) refund it received from the Columbia Gas Transmission Corporation (Columbia) in April 1994.[1] The practical result of the Commission having sustained Popowsky's complaint and having denied UGI's complaint is that UGI must refund to its customers ninety percent of the TOP refund.[2]

"Generally speaking, TOP costs are charges that interstate pipeline suppliers impose upon local gas distributors (LDCs), such as [UGI], under cost recovery procedures established by the Federal Energy Regulatory Commission (FERC) in accordance with FERC regulations." *National Fuel Gas Distribution Corporation v. Penn-*

---

1. On April 11, 1995, the Office of Consumer Advocate intervened in the matter docketed to No. 808 C.D.1995. On April 28, 1995, UGI intervened in the matter docketed to No. 917 C.D. 1995.

2. The 18.1 million dollar refund consisted of approximately 13.6 million dollars of principal and 4.5 million dollars of interest.

*sylvania Public Utility Commission,* 137 Pa. Cmwlth. 621, 587 A.2d 54, 55 (1991). The Commission has defined TOP costs as "costs assigned to the customer by the gas supplier, under a contract, for the purchaser's failure to take the contracted volumes." 52 Pa. Code § 69.181(b). Recognizing "that the incurrence of take-or-pay costs by Commonwealth jurisdictional local distribution companies will have a substantial impact upon the local distribution companies (LDCs) and their customers[,]" 52 Pa.Code § 69.181(a), the Commission, in its discretion, published a statement of policy at 52 Pa.Code § 69.181, providing for the LDCs to recover TOP costs from their customers. The Commission provided that an LDC could recover its TOP costs in one of the following two ways: (1) a base rate proceeding pursuant to 66 Pa.C.S. § 1308(b) or (d), or (2) a reconcilable surcharge pursuant to 66 Pa.C.S. § 1307(a). If an LDC elected to recover TOP costs through a surcharge, and if FERC approves a TOP refund after the surcharge takes effect, "the surcharge will be recomputed on a prospective basis to reflect the refund based on the percentage that the costs have been allocated between the company and its customers." 52 Pa.Code § 69.181(i).

UGI chose to recover its TOP costs through a surcharge, which was approved by the Commission on May 10, 1990.[3] The Commission permitted UGI to recover ninety percent of its TOP costs and $635,361.00 of interest pursuant to 52 Pa.Code § 69.181(n), which allowed the "[c]ollection of interest on LDC take-or-pay claims ... for the period of time from October 21, 1988, through November 3, 1989." At its public meeting on November 2, 1989, the Commission extended that time period through February 1, 1990. The Commission, in its discretion, allowed this collection of interest because of the regulatory delay in the implementation of its TOP policy statement.

When UGI received its TOP refund from Columbia in April 1994, it filed Supplement No. 93 to its tariff, proposing to return ninety percent of the principal portion of the refund (13.6 million dollars) to its customers but proposing to retain all of the interest portion of the refund (4.5 million dollars). By secretarial letter dated June 8, 1994, the Commission directed UGI to pass through to its customers ninety percent of the total refund of 18.1 million dollars less legal expenses of $775,686.00 which were incurred to secure the refund.

Both UGI and Popowsky filed formal complaints challenging the Commission's decision. UGI challenged the direction to pass through ninety percent of the total refund, while Popowsky challenged the allowance of legal expenses. Those complaints were consolidated on August 30, 1994, and after hearings in October and November of that year, the Commission's administrative law judge issued his recommended decision on January 10, 1995. He recommended that Popowsky's complaint challenging UGI's proposed retention of the interest portion of the refund be sustained and that UGI's complaint seeking to retain that interest be denied. Therefore, he recommended that UGI pass through to its customers ninety percent of the total refund of 18.1 million dollars. He also recommended that UGI be allowed to retain $775,686.00 of the refund to offset its legal expenses incurred to secure that refund. The Commission entered its order adopting the recommendations of the administrative law judge on February 27, 1995. This appeal followed.

▮ "It is well settled that the scope of judicial review in [Commission] cases is quite limited. In the absence of an error of law or violation of constitutional rights, an order of the [Commission] must be upheld if it is supported by substantial evidence." *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission,* 523 Pa. 370, 374, 567 A.2d 642, 643 (1989). "Certainly, much deference is to be accorded an agency's interpretations of its own regulations and orders." *Id.* at 374, 567 A.2d at 643–44. "An agency's interpretation ... should not be disregarded unless it is shown to be clearly erroneous...." *Saia's Used Cars v. Common-*

---

3. The Commission approved UGI's second surcharge proposal. The first proposal was disapproved on November 2, 1989.

*wealth,* 142 Pa.Cmwlth. 27, 596 A.2d 1212, 1216 (1991). At issue here is the Commission TOP statement of policy, about which we note the following:

> An administrative agency has available two methods for formulating policy that will have the force of law. An agency may establish binding policy through rulemaking procedures by which it promulgates substantive rules, or through adjudications which constitute binding precedents. A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

*Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 349–50, 374 A.2d 671, 679 (1977) (quoting *Pacific Gas and Electric Company v. Federal Power Commission,* 506 F.2d 33, 38 (D.C.Cir.1974)).

In the above-captioned matter docketed to No. 808 C.D.1995, UGI queries whether the Commission erred in requiring it to pass through to its customers ninety percent of the interest portion of the refund. UGI argues that the Commission's February 27, 1995 order conflicts with its May 10, 1990 order and with the statement of policy. According to UGI, the May 1990 order required UGI's customers to pay ninety percent of its TOP principal costs and $635,000.00 of TOP interest. UGI argues that "[t]here is no rational basis to support a $4 million interest refund to customers when those customers paid only $635,000 in interest costs." (Brief at 19.) According to UGI, "the ratemaking treatment of TOP refunds should track the ratemaking treatment of the underlying TOP expense." (Brief at 20.) UGI's customers paid ninety percent of the company's TOP costs and $635,000 of interest. UGI absorbed ten percent of its TOP costs and all of the remaining interest.

Believing that the recovery of TOP costs should be shared among all segments of the gas industry, the Commission concluded, in its November 2, 1989 adjudication rejecting UGI's first surcharge proposal, that allowing interest for a period longer than the fifteen months attributable to its delay in publishing its statement of policy was not warranted. The Commission stated the following:

> There is no statutory requirement that the Commission allow interest recovery on recoupment. The allowance of interest on recoupment is a matter clearly within the discretion of this Commission. Absent a compelling reason to the contrary, we continue to remain adverse to such an award. The decision to allow interest for the period referred to in the policy statement is intended only to address the delay which may have been occasioned by this Commission.

*Pennsylvania Public Utility Commission v. UGI Corporation,* 71 PA PUC 313, 323 (1989). With regard to refunds, the statement of policy provides that

> [i]n the case of an accepted offer to absorb a reasonable portion of the take-or-pay costs, if take-or-pay refunds are approved by the Federal Energy Regulatory Commission after the surcharge is in effect, the surcharge will be recomputed on a prospective basis to reflect the refund based on the percentage that the *costs* have been allocated between the company and its customers.

52 Pa.Code § 69.181(i) (emphasis added).

Here, the Commission required that the TOP refund of 18.1 million dollars be allocated based on the percentage that the TOP costs had been allocated, ten percent to UGI and ninety percent to its customers. Thus has the Commission exercised its discretion, adjudicating by interpreting its statement of policy based on its aversion to allow the recoupment of interest. We believe that the Commission has acted consistent with its statement of policy, but even if it had not, we are mindful that a statement of policy does not have the force of law but is only an indication of how the Commission *intends* to proceed. It is not bound to proceed thusly. We defer to the Commission

and note that we may not substitute our discretion for that of the administrative agency. *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954), *appeal denied,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955).

■ In the above-captioned matter docketed to No. 917 C.D.1995, Popowsky queries whether the Commission erred by permitting UGI to retain $775,686 of the refund to offset legal expenses it incurred in getting the refund. According to Popowsky, the Commission violated the rule against retroactive ratemaking because it permitted UGI to recover legal expenses incurred over a nine-year period. Additionally, Popowsky argues that these legal expenses cannot be recouped because they do not meet the requirements of the exception to retroactive ratemaking, i.e., they were not unanticipated, extraordinary, and nonrecurring.

■ We will affirm the Commission's order regarding the legal expenses, because (1) the principle of retroactive ratemaking does not apply and (2) the Commission acted within its discretion. The principle of retroactive ratemaking applies to base rate proceedings and not to surcharge proceedings such as this. *Equitable Gas Company v. Pennsylvania Public Utility Commission,* 106 Pa.Cmwlth. 240, 526 A.2d 823, *petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987), *Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utility Commission,* 653 A.2d 1336 (Pa. Cmwlth.1995), *affirmed per curiam,* 543 Pa. 307, 670 A.2d 1152 (1996). We believe that it was within the Commission's discretion to determine that UGI should be reimbursed for legal expenses, regardless of the fact that the statement of policy (which is not law) does not address such expenses.

Accordingly, the February 27, 1995 order of the Pennsylvania Public Utility Commission is affirmed.

### ORDER

**AND NOW,** this 10th day of June, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.